**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**

**LOVITTO MELECIO,**

      **Petitioner,**

**vs.**

                                      **CASE NO. 1:08cv159-MP/WCS**

**EDWIN G. BUSS, Secretary,**
**Florida Department of Corrections,[1]**

      **Respondent.**

_____/


**REPORT AND RECOMMENDATION**

      This case has been reassigned to me by Chief Judge Rodgers.  Doc. 38.

      This is a petition for writ of habeas corpus filed by Lovitto Melecio pursuant to 28

U.S.C. § 2254.  Doc. 1.  Petitioner challenges his convictions for robbery with a firearm

(count I), attempt to commit robbery armed with a firearm (count IV), and conspiracy to

commit armed robbery (count V) in the Circuit Court of the Eighth Judicial Circuit, in and

for Alachua County, Florida, case number 2001-3639-CFA.  _Id._  Petitioner is serving a

---

[1] Edwin G. Buss was appointed as Secretary of the Florida Department of
Corrections on February 14, 2011, and is substituted for Walter A. McNeil pursuant to
FED. R. CIV. P. 25(d).

sentence of life in prison for count I, and concurrent 15 year sentences for the other two

counts.  Respondent filed an answer and the record  in paper form.  Doc. 19.

References herein to exhibits are to the record in paper form.  Petitioner filed a traverse.

Doc. 21.

Petitioner moved for leave to file a supplement to his petition, adding a new

ground one.  Doc. 17.  That motion was granted.  Doc. 18.  Except with regard to the

new claim in the supplemental petition, Respondent concedes that the petition was

timely filed.  Doc. 19, p. 8.

**Section 2254 Standard of Review**

"Federal habeas relief is available to state prisoners only after they have

exhausted their claims in state court.  28 U.S.C. §§ 2254(b)(1), (c)."  O'Sullivan v.

Boerckel, 526 U.S. 838, 839, 119 S.Ct. 1728, 1730, 144 L.Ed.2d 1 (1999).  To properly

exhaust remedies as required by § 2254(b), "the federal claim must be fairly presented

to the state courts."  Picard v. Connor, 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d

438 (1971), Duncan v. Henry, 513 U.S. 364, 365, 115 S.Ct. 887, 888, 130 L.Ed.2d 865

(1995) (*citing* Picard).  However, "[a]n application for a writ of habeas corpus may be

denied on the merits, notwithstanding the failure of the applicant to exhaust the

remedies available in the courts of the State."  28 U.S.C. § 2254(b)(2).[2]

While it is not necessary that the petitioner cite "book and verse" of the

Constitution, the state court must be alerted to the fact that a federal constitutional claim

---

[2] If no constitutional claims are raised, then §2254 is inapplicable and the
exhaustion inquiry is irrelevant.  Engle v. Isaac, 456 U.S. 107, 120, n. 19, 102 S.Ct.
1558, 1567, n. 19, 71 L.Ed.2d 783 (1982).

is raised.  <u>Duncan</u>, 513 U.S. at 365-366, 115 S.Ct. at 888 (citations omitted); *see also*

<u>McNair v. Campbell</u>, 416 F.3d 1291, 1303 (11th Cir. 2005) (holding that a petitioner

must "do more than scatter some makeshift needles in the haystack of the state court

record") (citations omitted).  The petitioner also "must give the state courts one full

opportunity to resolve any constitutional issues by invoking one complete round of the

State's established appellate review process."  <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838,

845, 119 S.Ct. 1728, 1732, 144 L.Ed.2d 1 (1999); <u>Pope v. Rich</u>, 358 F.3d 852, 854

(11th Cir. 2004) (applying this one complete round requirement to state collateral review

process as well as direct appeal).

     If a claim was not fairly presented but is procedurally barred from further state

court review,[3] Petitioner must demonstrate cause for the default and actual prejudice, *or*

demonstrate that the constitutional violation has probably resulted in conviction of an

innocent person.  <u>Coleman v. Thompson</u>, 501 U.S. 722, 750, 111 S.Ct. 2565, 115

L.Ed.2d 640 (1991); <u>McCleskey v. Zant</u>, 499 U.S. 467, 494-95, 111 S.Ct. 1454, 1470-

71, 113 L.Ed.2d 517 (1991).

     If the state court reached the merits of the federal claim, a petitioner is entitled to

federal habeas relief only if the state court's adjudication of the merits of the federal

claim:

> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States;  or

---

[3] Procedurally defaulted claims are considered technically exhausted because
state court remedies no longer remain "available."  The court therefore refers to "fairly
presented" claims as having been *properly* exhausted, to distinguish them from claims
exhausted by procedural default.  *See* <u>O'Sullivan</u>, 526 U.S. at 848, 119 S.Ct. at 1734.

(2) resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented in the State
court proceeding.

§ 2254(d); Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495, 1523, 146  L.Ed.2d 389

(2000); Ramdass v. Angelone, 530 U.S. 156, 120 S.Ct. 2113, 2119-20, 147 L.Ed.2d 125

(2000).

"[C]learly established Federal law, as determined by the Supreme Court of the

United States," refers only to holdings (rather than *dicta*) of the Supreme Court, but

decisions of lower federal courts may be considered to the extent that they demonstrate

how those courts applied Supreme Court holdings.  Hawkins v. Alabama, 318 F.3d

1302, 1309 (11th Cir. 2003) (citations omitted) ("The decisions of other federal circuit

courts (and our decisions for that matter) are helpful to the AEDPA inquiry only to the

extent that the decisions demonstrate that the Supreme Court's pre-existing, clearly

established law compelled the circuit courts (and by implication would compel a state

court) to decide in a definite way the case before them.").  *See also*, Carey v. Musladin,

549 U.S. 70, 74-77, 127 S.Ct. 649, 653-654, 166 L.Ed.2d 482 (2006) (§ 2254 refers to

holdings, rather than *dicta*, of the Supreme Court, collecting cases to show that

"[r]eflecting the lack of guidance from this Court, lower courts have diverged widely in

their treatment of defendants' claims").

> The "contrary to" clause in § 2254(d)(1) "suggests that the state court's
> decision must be substantially different" from the relevant Supreme Court
> precedent.  Although a state court's decision that "applies a rule that
> contradicts the governing Supreme Court law is "contrary," a state court
> decision that applied "the correct legal rule" based on Supreme Court law
> to the facts of the petitioner's case would not fit within the "contrary to"
> clause even if the federal court might have reached a different result
> relying on the same law.  In evaluating the "'unreasonable application'
> inquiry," the federal court should consider whether the state court's

> application of the law was "objectively unreasonable" and should not apply
> the subjective "all reasonable jurists" standard.  The Supreme Court
> clarified that, under 28 U.S.C. § 2254(d)(1), the federal court may not
> issue the writ unless it finds that the state court applied Supreme Court
> law unreasonably.

Fugate, 261 F.3d at 1216 (summarizing the conclusions in Williams, citations omitted).

Of course, if the state court fails to address the merits of the federal claim, such

deference is not required.  Bellizia v. Florida Dept. of Corrections, 614 F.3d 1326, 1328

n. 1 (11th Cir. 2010).

> Further,

> . . . a determination of a factual issue made by a State court shall be
> presumed to be correct. The applicant shall have the burden of rebutting
> the presumption of correctness by clear and convincing evidence.

§ 2254(e)(1); Fugate v. Head, 261 F.3d 1206, 1215 and n. 11 (11th Cir. 2001) (citation

omitted).

> If the applicant has failed to develop the factual basis of a claim in State
> court proceedings, the court shall not hold an evidentiary hearing on the
> claim unless the applicant shows that –

> (A) the claim relies on –

>> (i) a new rule of constitutional law, made retroactive to cases
>> on collateral review by the Supreme Court, that was
>> previously unavailable;  or

>> (ii) a factual predicate that could not have been previously
>> discovered through the exercise of due diligence;  and

> (B) the facts underlying the claim would be sufficient to establish by clear
> and convincing evidence that but for constitutional error, no reasonable
> factfinder would have found the applicant guilty of the underlying offense.

§ 2254(e)(2).

As explained by the Supreme Court, "[i]f there has been no lack of diligence at the relevant stages in the state proceedings, the prisoner has not 'failed to develop' the facts under § 2254(e)(2)'s opening clause, and he will be excused from showing compliance with the balance of the subsection's requirements."  (Michael) Williams v. Taylor, 529 U.S. 420, 437, 120 S.Ct. 1479, 1491, 146 L.Ed.2d 435 (2000).

For an ineffectiveness of counsel claim, the "clearly established" standard is set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under Strickland, "[a] convicted defendant making a claim of ineffective assistance of counsel must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."  466 U.S. at 690, 104 S.Ct. at 2066.  In determining whether counsel gave adequate assistance, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  466 U.S. at 690, 104 S.Ct. at 2066.  Petitioner has a heavy burden, as he must show that "no competent counsel would have taken the action that his counsel did take."  Fugate, 261 F.3d at 1217 (citation omitted).  There are no rigid requirements or absolute duty to investigate a particular line of defense, and "more is not always better."  Id. (citations omitted).

Even if Petitioner can show deficient performance, he must also show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  466 U.S. at 694, 104 S.Ct. at 2068.

While <u>Strickland</u> explained the performance and prejudice prongs of analysis, the court need not address them in that order or even address both, as failure to demonstrate either step of <u>Strickland</u> is dispositive of the claim against the petitioner. 466 U.S. at 697, 104 S.Ct. at 2069.

**Legal analysis**

The petition brings ten claims of ineffective assistance of counsel, grounds A through J.  Doc. 1.  These are the same claims that Petitioner presented to the state court in his Rule 3.850 motion as grounds 1 through 10.  Exs. T, V.

The state court order ruling upon Petitioner's Rule 3.850 motion confusingly listed the claims as claims 1(A) through 1(J), and left out claim 10.  Ex. U.  Claim 1(A) was claim 1 of the motion.  Claim 1(B) was claim 2 of the motion.  Claim 3 of Petitioner's Rule 3.850 motion became claims 1(C) and 1(D).  Claim 4 became claim 1(E).  Claim 5 became 1(F).  Claim 6 became claim 1(G).  Claim 7 became claim 1(H).  Claim 8 became claim 1(I).  Claim 9 became claim 1(J).  Claim 10, a claim of cumulative error by counsel, was not listed by the state court.  Compare Ex. T to Ex. U.

Then, as it ruled upon these claims, the Rule 3.850 court treated claim 1(C) as if it had incorporated claim 1(D), thereby effectively ruling on claim 3 in the motion.  Ex. U, pp. 5-8.  The court then said it was ruling on claim 1(D), but this was really claim 1(E) as initially listed, or claim 4 of the motion.  *Id.*, p. 8.  Likewise, the rulings dealing with claims 1(E) through 1(I) were dealing with the claims as earlier listed 1(F) through 1(J), which were claims 5-9 in the motion.  Lastly, the court's ruling as to reordered claim 1(J) was a ruling on the cumulative error claim 10 in the motion.  *Id.*, pp. 8-12.

The Rule 3.850 court granted an evidentiary hearing on claim 1(H), which had been previously listed as claim 1(I), and was Petitioner's claim 8 and is ground H in this petition.[4] The state court summarily denied all of the other claims, except for ground 1(B) (claim 2), as to which ruling was deferred to permit Petitioner to file an attachment. Ex. U. Petitioner filed the attachment. Ex. V. The trial court then denied ground 1(B) (claim 2) summarily and ground 1(H) (claim 8) based upon evidence at the Rule 3.850 hearing. Ex. X.

Petitioner, through counsel, filed an appeal from this ruling but raised only ground 2 (ground B herein), that trial counsel was ineffective for failing to impeach state witness Terry Blake, which had been summarily denied by the trial court, and grounds 8 (ground H herein), that trial counsel was ineffective for failing to move to suppress Petitioner's statements to law enforcement as the product of improper coercion, which had been denied after an evidentiary hearing. Ex. Z, pp. 10, 11-20.

Respondent concedes that Petitioner exhausted state court remedies as to grounds B and H in this petition, which were grounds 2 and 8 in te Rule 3.850 motion.. Doc. 19, pp. 17-18, 23.[5]

---

[4] Contrary to Respondent's view of the record, however, the Rule 3.850 court summarily rejected ground 7. Ex. U, p. 9, calling this ground (G), which really was ground 1(H) as originally listed. The ground was not combined with ground 8. This does not matter, however, as the claims in 7 and 8 are the same.

[5] Respondent also concedes that ground G was exhausted, but it was not.

**Grounds A, C, D, E, F, G, I, and J**

Respondent argues that claims A, C, D, E, F, G, I, and J are procedurally barred because Petitioner did not present these claims in his brief on appeal from denial of the claims.  Doc. 19, pp. 14-22.

The "one complete round" exhaustion requirement set forth in O'Sullivan v. Boerckel, *supra*, applies to post-conviction review as well, and a prisoner must appeal the denial of post-conviction relief in order to properly exhaust state remedies.  Leonard v. Wainwright, 601 F.2d 807, 808 (5th Cir. 1979)[6] (Florida prisoner must appeal denial of Fla.R.Crim.P. 3.850 relief to exhaust remedies); LeCroy v. Secretary, Florida Dept. of Corrections, 421 F.3d 1237, 1261 (11th Cir. 2005) (as Florida prisoner failed to properly exhaust claim on direct appeal or Rule 3.850 appeal, it was procedurally barred, citing Coleman); Pope v. Rich, 358 F.3d 852, 854 (11th Cir. 2004) ("Boerckel applies to the state collateral review process as well as the direct appeal process"); Pruitt v. Jones, 348 F.3d 1355, 1359 (11th Cir. 2003); White v. Godinez, 192 F.3d 607 (7th Cir.1998), *cert denied*, 120 S.Ct. 1004 (2000) (finding no "appreciable difference between direct appeals and post-conviction appeals in this regard," holding Boerckel requires appeal following collateral review).[7]

The Rule 3.850 court denied relief after an evidentiary hearing on some of the claims, so Petitioner was required to submit a brief on appeal.  FLA. R. APP. P.

---

[6] The Eleventh Circuit adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.  Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981).

[7] The case was before the Seventh Circuit on remand for further consideration in light of O'Sullivan.  192 F.3d at 608 (citations omitted).

9.141(b)(3)(C).[8]  He did file a brief raising three claims, and his failure to specifically

address the other individual claims that had been summarily denied constituted a waiver

of those issues in the First District Court of Appeal.  *See, e.g.*, Sweet v. State, 810 So.

2d 854, 870 (Fla. 2002) (holding that claims raised on appeal from order denying post-

conviction relief were procedurally barred where petitioner received an evidentiary

hearing on his Rule 3.850 motion – albeit not on those particular claims – and failed to

fully brief the claims on appeal); Carroll v. State, 815 So. 2d 601, 609 n. 7 (Fla. 2002);

Duest v. Dugger, 555 So. 2d 849, 851-52 (Fla.1990) (reference to arguments raised in

post conviction motion was insufficient; "[t]he purpose of an appellate brief is to present

arguments in support of the points on appeal.  Merely making reference to arguments

below without further elucidation does not suffice to preserve issues," so they were

deemed waived); Marshall v. State, 854 So. 2d 1235, 1238-1239, 1252 (Fla. 2003) (27

claims were raised in the Rule 3.850 motion, an evidentiary hearing was held of four of

the claims, the remaining claims were summarily denied, and (after the hearing) the trial

court denied all relief; the summary denial of 22 claims without a hearing was

challenged on appeal, but the court found, "[e]xcept for claims (4), (15), and (25),

Marshall presents no definitive argument on appeal, other than simply listing the issue

raised below. Thus, these claims are insufficiently presented for review.").

---

[8] A brief is not required on appeal from summary denial of all claims in a Rule
3.850 motion, that is, without an evidentiary hearing.  FLA. R. APP. P. 9.141(b)(2)(C).
Although not applicable in this case, where briefs are not required, there is
no procedural default for failing to mention some of the claims that had been litigated in the
Rule 3.850 motion. Cortes v. Gladish, 216 Fed.Appx. 897, 899  (11th Cir. 2007).

Thus, grounds A, C, D, E, F, I, and J are procedurally defaulted.  Atwater v. Crosby, 451 F.3d 799, 809-810 (11th Cir.  2006), *cert. denied*, 549 U.S. 1124 (2007); Cortes v. Gladish, 216 Fed.Appx. 897, 899-900 (11th Cir. 2007) (not selected for publication in the Federal Reporter, No. 05-16399) ("had Cortes received an evidentiary hearing, his failure to address issues in his appellate brief would constitute a waiver."). Thus, Petitioner must show cause for this default, and prejudice to the outcome, before this court may reach the merits of these claims.

Petitioner argues as cause that he told his lawyer to include these claims in his brief on appeal from denial of his Rule 3.850, but "counsel ignored his pleas."  Doc. 21, p. 23.  He argues that he had a court-appointed lawyer for the Rule 3.850 motion appeal and contends that inaction of his lawyer was inaction by "a government agent."  *Id.*  He also argues that he could not remedy the problem himself, *pro se*, because he had a lawyer.  *Id.*, p. 25.

An error by counsel in state post-conviction proceedings, however, cannot constitute "cause" for the default since there is no right to counsel in post-conviction proceedings.  Lawrence v. Florida, 549 U.S. 327, 336-337, 127 S.Ct. 1079, 1085, 166 L.Ed.2d 924 (2007); Keeney v. Tamayo-Reyes, 504 U.S. 1, 112 S.Ct. 1715, 1720, n. 5, 118 L.Ed.2d 318 (1992); Coleman v. Thompson, 501 U.S. 722, 111 S.Ct. 2546, 2566, 115 l.Ed.2d 640 (1991); Murray v. Giarratano, 492 U.S. 1, 109 S.Ct. 2765, 2771, 106 L.Ed.2d 1 (1989); Wainwright v. Torna, 455 U.S. 586, 102 S.Ct. 1300, 71 L.Ed.2d 475

(1982); <u>Toles v. Jones</u>, 888 F.2d 95, 99-100 (11th Cir. 1989) and cases cited.[9]

Therefore, the court cannot reach the merits of grounds A, C, D, E, F, I, and J.

**Ground B**

Petitioner contends that his trial attorney was ineffective for failing to impeach

Terrence Blake. Doc. 1, p. 4. Petitioner asserts that Blake testified at his trial that co-

defendant Eugene Jackson (who was tried separately) fired more than one shot from a

gun on the night of the robberies. *Id.*, p. 4E (p. 10 on ECF). Petitioner asserts that

Blake signed a statement prior to trial that Jackson had not fired a gun at all. *Id.* It is

apparently Petitioner's theory that, had Blake been confronted with his earlier statement

(that Jackson had not fired a gun at all), his testimony that Jackson had fired more than

once during the robberies would have been impeached. Attached to the petition is a

statement by Blake that Jackson did not possess a firearm on the "day of the incidents"

and did not participate in either of the robberies on October 2, 2001. Doc. 1, attachment

A-1 (p. 34 on ECF).

In denying this claim, the Rule 3.850 court reasoned that Petitioner's trial strategy

was to convince the jury that Petitioner's confession was accurate, that he and Eugene

Jackson were involved in the robberies, and that he (Petitioner) had a firearm, but that

only Jackson fired a handgun. Ex. X, R. 17-18. Thus, it was Petitioner's trial strategy to

contend that Jackson fired the shot that injured the victim. *Id.*, p. 18. The court noted:

"Trial counsel's testimony at the [Rule 3.850] evidentiary hearing confirmed that

---

[9] Rehearing was granted and vacated *en banc*, 905 F.2d 346 (11th Cir. 1990); *en banc* order rescinded and panel opinion reinstated, 951 F.2d 1200 (11th Cir. 1992).

Defendant agreed to a trial strategy focused on the guns fired during the robbery, not on the validity of Defendant's confession." *Id.* The court concluded:

> In light of the agreed-upon trial strategy, and evidence of Eugene Jackson's involvement in the robberies in support of that strategy, there is no likelihood that evidence of Jackson's noninvolvement in the robberies, or impeachment of Blake's testimony regarding Jackson's involvement, would have affected the outcome of the trial.

*Id.* In other words, impeachment of Blake with Blake's prior statement would have been inconsistent with this defensive strategy.

"The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." Roe v. Flores-Ortega, 528 U.S. 470, 481,120 S.Ct. 1029, 1037, 145 L.Ed.2d 985 (2000). Petitioner now argues that the purpose of this tactic would have been to show that Blake was willing to lie to protect Jackson, to explain why Blake said that Petitioner did the shooting, not Jackson. Doc. 21, p. 7. While in the abstract that might be true, Petitioner does not meaningfully address the problem of trial strategy. While Petitioner argues that his attorney's strategy, to argue that his confession was true, was contrary to his wishes, doc. 21, pp. 7-8, the state court concluded that this was not true, based upon the record. Further, Petitioner does not set forth any alternatively trial strategy that could have been used to alter the outcome.

The trial court's reasoning, on the other hand, is logical. Petitioner's confession was in evidence. Ex. D, trial transcript, pp.477-488. Petitioner confessed that his cousin, Eugene Jackson, took part in the two robberies, that committing the robberies was in part Jackson's idea, that he (Petitioner) heard gunshots during or after both robberies, but he did not fire his own weapon and he had no bullets in his gun. *Id.*, pp. 479-480, 482-486. Petitioner's strategy was to place Jackson in the middle of the

robberies, shooting and injuring the victim, and to argue that his confession was true.

See closing argument, Ex. D, trial transcript, pp. 624-626.  Thus, it would have been

unreasonable to point out to the jury that earlier Blake had denied that Jackson had

been involved at all, or that Jackson did not have a firearm.  Petitioner has not shown

that the state court's ruling on this federal claim has "resulted in a decision that was

contrary to, or involved an unreasonable application of, clearly established Federal law,

as determined by the Supreme Court of the United States."  § 2254(d)(1).

**Ground H**

 Petitioner claims that his trial attorney was ineffective for failing to move to

suppress his confession.  Doc. 1, p. 4Q (p. 23 on ECF).  Petitioner alleges that he told

his attorney that he had not eaten for three days and was tortured into confessing.  *Id.*

The trial court held an evidentiary hearing on this claim and denied it on the

merits.  "If a claim has been adjudicated on the merits by a state court, a federal habeas

petitioner must overcome the limitation of § 2254(d)(1) on the record that was before

that state court."  Cullen v. Pinholster, __ U.S. __, 131 S.Ct. 1388, 1400 (2011); Holland

v. Jackson, 542 U.S. 649, 652, 124 S.Ct. 2736, 2738, 159  L.Ed.2d 683 (2004)

("[W]hether a state court's decision was unreasonable must be assessed in light of the

record the court had before it.").

The Rule 3.850 court said that it was undisputed that Petitioner was interviewed

twice, and the first interview was not recorded.  Ex. X, R. 14.  The court noted that

Petitioner testified at the evidentiary hearing that after the initial interview, the

interviewing officer told him that the first audio recording had failed and told him that "if

you want to see your grandmother alive," he should help law enforcement.  *Id.*, R. 14-

15.  The court found that Petitioner confessed in the second interview.  *Id.*, R. 15.  The

court found that Petitioner testified that during the initial interview, he repeatedly asked

for an attorney, denied involvement in the crimes, and that he told this to his trial

attorney.  *Id.*  As proof of this, Petitioner relied upon exhibit A to his December 27, 2006,

motion.  *Id.*  Petitioner testified that he asked his attorney to seek suppression of his

confession.  *Id.*  Petitioner denied that he stipulated to admission at trial of the *Miranda*

waiver, and he asserted that he did not know that a waiver existed.  *Id.*

The state court noted that the state prosecutor, Brian Kramer, testified that no

issue was ever raised about a coerced confession, and he said he viewed "both videos"

and "there was no indication in either of coercion."  *Id.*

The state court reported that Petitioner's own attorney, Dan O'Connell, testified

that he did not learn of a claim of coercion until after trial, and that Petitioner did not

mention it before trial.  *Id.*  The court further found that in the recorded interview,

Petitioner acknowledged that he had been advised of his *Miranda* rights and waived

them.  *Id.*, R. 16, citing the trial transcript, Ex. D, p. 477.  Finally, the trial court noted

that in 2002, when Petitioner sought to have his attorney removed in a *Nelson* inquiry,[10]

he mentioned the video tapes of his confession but did not mention any allegation of

coercion.  *Id.*, R. 16.

The state court determined, therefore, that Petitioner "did not advise his attorney

prior to trial of any threats or coercion that may have provided the basis for a motion to

---

[10] Nelson v. State, 274 So. 2d 256 (Fla. 4th DCA 1973), establishing Florida
procedures for hearing a pretrial claim of ineffective assistance of counsel.  Hardwick v.
State, 521 So. 2d 1071, 1074-75 (Fla. 1988).

suppress [his] confession, and further finds that his attorney was not ineffective for

failing to seek such relief." *Id.*, R. 16.

Petitioner has not shown that the state court's determination has "resulted in a

decision that was based on an unreasonable determination of the facts in light of the

evidence presented in the State court proceeding." § 2254(d)(2).  In particular, the trial

transcript shows that at the beginning of the second interview, the officer asked

Petitioner: "And prior to the [first] interview, Mr. Melecio, did we go over your written

Miranda and waive rights with you?"  Ex. D, p. 477.  Petitioner answered: "Yes, sir."  *Id.*

Petitioner was asked whether the signatures on the waiver form were his, and he again

said yes, sir.  *Id.* The officer then represented that, prior to the first interview, he and

another officer went over Petitioner's Miranda rights and the interview was recorded by

video but the audio portion failed to record.  *Id.*, pp. 477-478.  The officer represented

that during that first interview, Petitioner "confessed to his involvement and the

involvement of others into some robberies and shootings that happened in Gainesville,

Florida."  *Id.*, p. 478.  The officer next asked Petitioner if he was aware that the first

interview was audiotaped, and he said yes, but Petitioner acknowledged that the

microphone was not on, so the audio did not record.  *Id.*  Petitioner was then asked to

start at the beginning and provide the same information again.  *Id.*

Further, Petitioner's attorney testified that Petitioner made no claim of coercion to

him prior to trial.  Ex. W, transcript of Rule 3.850 hearing, pp. 18-19, 21.  Petitioner's

attorney was then asked about the *Nelson* inquiry that resulted from the filing on August

23, 2002, a letter from Petitioner accusing his attorney of failing to let him see the

videotape of his confession. *Id.*, pp. 19-20.  That portion of the letter was read into the record. *Id.*, p. 20.  There was nothing in that letter or raised during the *Nelson* inquiry alleging that Petitioner was tortured or improperly coerced into confessing. *Id.*  Counsel for Petitioner testified that there was never any objection to the second videotape, and in fact, they stipulated to it. *Id.*, p. 25.  When asked whether Petitioner had ever specifically talked about how he had been treated in the interrogation, he told his attorney that "they treated him like gold." *Id.*, pp. 26-27.  Petitioner's attorney said he had viewed the video of the first interview, without audio, and there was nothing in that video to suggest that Petitioner was physically mistreated. *Id.*, p. 29.  For these reasons, ground H affords no relief.

**Supplemental ground one, doc. 17**

Petitioner contends that the trial court erred by failing to sever the trial of count I, one charge of robbery, from another in count IV, another robbery in which a victim was shot with a firearm.  Doc. 17, pp. 2-3.  Petitioner argues that the second robbery occurred "on another side of town" and did not have any connections with the first robbery. *Id.*, p. 3.  He argues that the evidence that there was a victim in the second robbery caused the trial of the first robbery to be unfair. *Id.*

Respondent argues that this ground differs from the claims originally made, and does not arise from a core of common facts.  Respondent argues that the new claim does not relate back to any of the original claims, and is untimely.  See doc. 19, pp. 9-12.

Respondent has set forth the tolling that occurred in this case, and Petitioner has not disputed that calculation.[11]  Doc. 19, pp. 4-8.  The instant petition for writ of habeas corpus was deemed filed in this court by the mail box rule on June 30, 2008, doc. 1, p. 6, with 33 days left of the one year period provided by 28 U.S.C. § 2254(d).  *Id.*, p. 8. This supplemental claim was not filed until January 20, 2009, doc. 17, p. 4, about six months beyond the one year period as tolled.  *Id.*

There is a one year limitations period for filing a § 2254 petition, which generally runs from the date on which the judgment at issue became final by conclusion of direct review or the expiration of time for seeking direct review.   28 U.S.C. § 2244(d)(1)(A).[12] Amendments to a § 2254 petition are initially governed by FED. R. CIV. P. 15 since FED. R. CIV. P. 81(a)(4) provides that the civil rules apply to habeas corpus if not inconsistent with statute or habeas rules.  *See also* § 2254 Rule 12.  Rule 15(c)(1)(B) provides that an amended claim relates back to the original pleading when the claim arises "out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading."  In Mayle v. Felix, 545 U.S. 644, 125 S.Ct. 2562, 162 L.Ed.2d 582 (2005), however, the Court held that "[a]n amended habeas petition . . . does not relate back

_____

[11] The calculation is essentially accurate.  Petitioner tried to "appeal" to the Florida Supreme Court from a *per curiam* decision of the First District Court of Appeal, but even if that "appeal" was "properly filed," this activity would have added only about another week of tolling activity, from June 20, 2008, to June 26, 2008.  Doc. 19, pp. 6-7.

[12] The limitations period runs from the latest of specified dates.  Other possible commencement dates are the date on which an unconstitutional impediment which prevented the applicant from filing is removed; the date on which the right asserted was recognized by the Supreme Court and made retroactive on collateral review; and the date on which the factual predicate for the claim could have been discovered by due diligence.  § 2244(d)(1)(B)-(D).  None of these later dates apply in this case.

(and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth."  545 U.S. at 650, 125 S.Ct. at 2566.  The Court noted that "Habeas Corpus Rule 2(c) is more demanding" than Fed. R. Civ. P. 8(a), and requires a "more detailed statement" of the habeas claim.  545 U.S. at 649, 655, 125 S.Ct. at 2566, 2570. Habeas Rule 2(c) requires that the petition "specify all grounds for relief" and "state the facts supporting each ground."  *Id.*, quoting 2(c), footnote 1 omitted.  "So long as the original and amended petitions are tied to a common core of operative facts, relation back will be in order."  545 U.S. at 664, 125 S.Ct. at 2574, fn. 7 omitted.  In footnote 7 the Court provided examples where circuit courts found relation back of amended habeas petitions, and that relation back is usually allowed when the new claim is based on the same facts and changes the legal theory.  545 U.S. at 664, 125 S.Ct. at 2574-75, n. 7 (citations omitted).

Petitioner originally brought 10 claims of ineffective assistance of counsel, grounds A through J.  Doc. 1, p. 4-4T (pp. 1-27 on ECF, the electronic docket).  None of the claims of ineffectiveness concerned the fact that Petitioner was tried for two robberies in one trial.  The supplemental claim faulting the trial court for not severing the charges for trial does not relate back and is barred by the AEDPA one year statute of limitations.

Petitioner argues that he should be granted equitable tolling as to this claim.  He asserts that he did not understand that he could have presented it in his original petition. Doc. 21, p. 21.  He seems to argue that because he presented this claim to the state

court, he should be permitted to present it to this court.  *Id.*  He argues that this court's

failure to consider this claim would be a "manifest injustice."  *Id.*  He notes that this court

granted him leave to amend.  *Id.*

The order granting leave to amend specifically noted that no opinion was

expressed as to whether the claim was timely.  Doc. 18.  The order did not excuse the

untimeliness of this amendment.

Section 2244(d) is subject to equitable tolling.  Holland v. Florida, 560 U.S. __,

130 S.Ct. 2549, 2560, 177 L.Ed2d 130 (2010).

> Because equitable tolling is "an extraordinary remedy," it "is limited to rare
> and exceptional circumstances" and "typically applied sparingly."
> *Lawrence v. Florida*, 421 F.3d 1221, 1226 (11th Cir.2005), aff'd, 549 U.S.
> 327, 127 S.Ct. 1079, 166 L.Ed.2d 924 (2007).  Thus, we have concluded
> that equitable tolling is available only " 'when a movant untimely files
> because of extraordinary circumstances that are both beyond his control
> and unavoidable even with diligence.' "  *Id.* (*quoting Sandvik v. United
> States*, 177 F.3d 1269, 1271 (11th Cir. 1999)).  The petitioner bears the
> burden of showing that equitable tolling is warranted.  *See Drew v. Dep't
> of Corr.*, 297 F.3d 1278, 1286 (11th Cir. 2002).

Hunter v. Ferrell, 587 F.3d 1304, 1308 (11th Cir. 2009).

> The burden of proving circumstances that justify the application of the
> equitable tolling doctrine rests squarely on the petitioner.  Mere conclusory
> allegations are insufficient to raise the issue of equitable tolling.

San Martin v. McNeil, 633 F.3d 1257, 1268 (11th Cir. 2011), *pet. cert. filed* (May 20,

2011) (NO. 10-10678).

A negligent mistake made by a *pro se* petitioner does not give rise to equitable

tolling.  Murphy v. United States, 634 F.3d 1303, 1306 (11th Cir. 2011).  Indeed, a

negligent mistake made by a petitioner's lawyer does not equitably toll the one year

period.  Lawrence v. Florida, 549 U.S. 327, 336, 127 S.Ct. 1079, 1085, 166 L.Ed.2d 924

(2007).[13]

There is an exception for a "fundamental miscarriage of justice" if the petitioner

shows that he is actually factually innocent, San Martin v. McNeil, 633 F.3d at 1267-

1268, but Petitioner has not made that showing here.  The new claim presented in

document 17 is time-barred and the court cannot reach the merits of that claim.

**Certificate of Appealability**

Section 2254 Rule 11(a) provides that "[t]he district court must issue or deny a

certificate of appealability when it enters a final order adverse to the applicant," and if a

certificate is issued "the court must state the specific issue or issues that satisfy the

showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be

filed, even if the court issues a certificate of appealability.  § 2254 Rule 11(b).

I find no substantial showing of the denial of a constitutional right.  § 2253(c)(2);

Slack v. McDaniel, 529 U.S. 473, 483-84, 120 S.Ct. 1595, 1603-04, 146 L.Ed.2d 542

(2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, I

recommend that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides:  "Before entering the final order,

the court may direct the parties to submit arguments on whether a certificate should

---

[13] In Sandvik v. United States, 177 F.3d 1269 (11th Cir. 1999), the court found
equitable tolling not justified for a § 2255 motion filed beyond the one year AEDPA
period, where counsel mailed the § 2255 motion by regular mail less than a week before
it was due, and though mail delay was beyond his control, the problem could have been
avoided.  177 F.3d at 1272.

issue."  The parties shall make any argument as to whether a certificate should issue by objections to this report and recommendation.

**Conclusion**

Accordingly, it is **RECOMMENDED** that petition for writ of habeas corpus filed by Lovitto Melecio pursuant to 28 U.S.C. § 2254, challenging his convictions for robbery with a firearm (count I), attempt to commit robbery armed with a firearm (count IV), and conspiracy to commit armed robbery (count V), in the Circuit Court of the Eighth Judicial Circuit, in and for Alachua County, Florida, case number 2001-3639-CFA, be **DENIED WITH PREJUDICE** and that a certificate of appealability be **DENIED** pursuant to § 2254 Rule 11(a).

**IN CHAMBERS** at Tallahassee, Florida, on July 14, 2011.


s/    William C. Sherrill, Jr.
WILLIAM C. SHERRILL, JR.
UNITED STATES MAGISTRATE JUDGE


**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**